We want to welcome everyone to the 4th Circuit Court of Appeals this morning. We have two interesting cases. Good lawyers. The first case is Cooper v. Doyle. Mr. Levine. Good to have you with us. Thank you, Your Honor. Good morning. May it please the Court, there are two reasons why this Court should reverse the District Court's denial of summary judgment for police officers based on qualified immunity. First, the District Court made legal errors in its application of the Graham Factors and defined clearly established law generally. And secondly, the District Court mischaracterized certain facts and relied upon those facts as material when they are not. This Court has never denied qualified immunity to police officers who were confronted with a violent convicted felon who was armed with a handgun, who fled from them on foot, pulled the weapon from his waistband, and pointed at them. That has never happened. But that is precisely what the District Court here, by relying on facts that are not disputed and are not material, and by misapplying the Graham Factors. The Court's error with respect to the Graham Factors was first to incorrectly determine that the first prong, the severity of the offense, favored the- Let me ask you this before we, before you, I just want to make sure under the collateral order doctrine that we're all on the same page, that we can only consider, we cannot, we're only considering the law for purposes of here, for purposes that they're not the factual findings of the District Court. And we agree with that. Okay. And we certainly recognize the Court's jurisdictional limitations. We're not asking the Court to resolve any disputes of material fact. The issues on appeal are limited to legal errors and applying Graham. You may have changed some of the facts in your statement there a few minutes ago. I'm sorry, Your Honor? You may have changed some of the facts already, or tried to. Well, and I'll get to the examples, but in denying qualified immunity, the District Court relied entirely on one fact that's not disputed. The District Court said, well, Mr. O'Kran, some of the rounds struck him in the back. Our position is that's not material in this case. Of course some of the rounds- It's not material that he was shot in the back? Not on this record. And the reason is, of course he was shot partially in the back. He was shot in the back, what, seven times out of eight? There were three rounds that struck him in the back, but the record is clear. He was fleeing from the officers, and all of the testimony is consistent that he pulls the weapon from his waistband, and Sergeant Delgado describes that high elbow coming out of the waistband. I think the District Court says that testimony is self-serving, and that is what she's saying is the issue of fact for the jury to decide. But because there's some inconsistencies between the statements of the officers regarding a flash, hearing a gun, the issue of the shell casings, I mean, so even though we're not doing a factual review here, those are the things that led to her decision regarding it being a genuine issue of fact for the jury to decide. But none of those are material. For example, the shell casings, I'm not even getting to the firing of the weapon. The officers aren't required to wait until the weapon's fired before they can defend themselves. So even discounting whether the weapon was fired, there were shell casings from the officers that weren't found. There were 27 rounds fired, four of the casings were not recovered. 27 rounds fired- By the officer. By the officer. In total. And eight that struck him. And eight that struck Mr. O'Kran and four casings that were never recovered, which is not uncommon in a large parking lot that was sort of waterlogged. That isn't unusual. So can we just set the facts here so that you are arguing the legal issue? It seemed like the district court said repeatedly there is a dispute of material fact about two things, whether he pointed the gun and whether he fired the gun. It said, you know, plaintiff accepts defendant's version of the facts except for these two things, and her opinion finds a material dispute of fact about these two things. So you have to accept, and you have to accept that on this appeal, right? Now, those may prove to be wrong. It may, you know, the facts may prove otherwise. But right now we have to accept that he didn't point the gun and he didn't fire it. Can you still prevail on qualified immunity at this stage under those facts? We can because the only thing the district court relied on in concluding that there's a dispute. But you said earlier that he did point it and he did fire it. Our position is the weapon was pointed and fired. There's really nothing in the record. So you dispute the facts that you said are an issue. But I'm discounting the firing. So I'm setting aside the firing and focusing only on the pointing. And what the district court said was, well, the only way we can call into question whether it was pointed is the shot placement. And that's not a material fact in this case. You've got to accept that, right? She said there's a material fact about pointing and firing. But now there's still, I mean, you've still got a lot of facts to work with here. He's running away. They know he has a firearm. Somehow it gets out of his waistband at some point, right, because it's found by his right hand. There's the high elbow. There's the reaching. I mean, are you saying on those facts it is not, it was not clearly established that you cannot prevail on the facts as the district court found them? Or are you saying you can prevail on the facts as the district court found them? Well, I think it's twofold. I think accepting those facts that he's running, he blades, turns, and the high elbow comes up, they don't have to wait until the weapon is pointed in their direction. But again, the court does not have to accept the district court's characterization of a particular fact as material. We're not disputing the genuineness of it, which I agree is not reviewable. But that issue of whether the firearm was pointed because of where three of the shots landed, there's no materiality there under this fact pattern, under this record. It would be material, I would concede, if the testimony was that Mr. Ocran ran, stopped, turned, and squared up with the officers. And the testimony was, now he's facing us and we're shooting. But that's not the record. So under this fact pattern, of course there were rounds that struck him in the back. He's running and turns slightly. That is undisputed. And the district court can characterize those statements as self-serving. That's their sworn testimony under oath, and it's completely consistent with all the physical evidence in the case. So I think it's vastly different than, for example, Nibs or some of these cases where you have essentially a faultless plaintiff who's standing in his living room with a shotgun. And the deputy says, well, he lowers it in my direction. And this court said, well, but the estate has produced competent evidence to dispute that. There was expert testimony in that case that there was a dispute about whether the weapon was pointed up. There's nothing like that here. There is nothing in the record to call really into question at all their testimony. This issue with the- In Nibs there was no, the court really surveyed the case law. In Nibs there was no threatening movement, right? Or at least there was a dispute about whether there was a threatening movement. That was the whole dispute. Or any sort of furtive movement. The officers saw one, but it was disputed. Correct. And that seemed to be the decisive factor, from what I can tell. That was the decisive factor. The deputy claimed the shotgun was lowered in his direction. And again, the estate in that case had expert testimony in the record that, based on the forensics, the shotgun was likely pointed towards the ceiling. There's nothing like that in this case. So we have a fleeing convicted felon. And they knew an awful lot about him. And we detail this in the joint appendix beginning at 441. All of these text messages, he's looking to pull robberies, he's not going back to jail, he'll shoot it out. They knew an awful lot about Mr. Ocran before he fled, reached, and the weapon begins to come out. So even if we stop there in the analysis, it is objectively reasonable to use deadly force on a fleeing felon who reaches and begins even to draw the firearm. They don't have to wait until it comes completely out or is pointed in their direction. They're running through an apartment complex parking lot in the dark, and they have a split second to decide if they're going to be shot. And so even if we ended the fact pattern there, and there's no dispute leading up to that moment for sure. And our position as to the pointing is, again, there was nothing else the district, and I- Do you accept the fact that he didn't point the weapon? I don't accept the fact that he didn't point the weapon. Do you accept the fact that he didn't fire the weapon? I'm discounting whether he fired the weapon. Do you accept a fact that he did not fire the weapon? I would concede that there- Do you accept that as fact? No, I don't. I don't. You're talking yourself out of the jurisdiction of this court. But the court doesn't need to get there. And I have discounted whether he fired the weapon is not relevant to the reasonable force analysis. They don't have to wait to be fired upon. And so if we stop with the furtive movements in the waistband, the deadly force is authorized at that moment. And, again, the court entirely relies on the location of the shots in the back in denying qualified immunity. The court separated its analysis into two parts. The court says, well, we can- there's a dispute about whether the round was fired. I accept that for purposes of the court's jurisdiction. But as to the second issue, whether the firearm was pointed, the only fact, only fact the court relied upon was, well, he was shot in the back three times. That's not material given our context. It could be in other cases, but it isn't. I didn't ask you if they were even material. I asked you if you would accept those two facts, and you won't. Well- So you won't- you didn't come up here to talk about the right issues, I don't think. Well, let's assume we accept the fact that the firearm wasn't pointed and the firearm wasn't shot, as Judge Rushing indicated. The furtive movements alone are sufficient, and that's not disputed. The district court didn't mention anything about any dispute of fact regarding whether the weapon was on his person. That's undisputed. It's undisputed he was armed. Yeah, it is. I mean, there's no question he was a felon. He was a fleeing felon. He was shot in the back 27 times. He had a weapon. That weapon was not fired. This court has never- That's the case, basically. And she didn't accept the fact that he didn't point it and he didn't fire it. And that's fine. And this court has never denied qualified immunity when you have furtive movements like the ones we have here, where you have a- So you do accept those facts? I'll accept those facts. Do you accept those facts? I do accept those facts. Because we can still move forward on the furtive movements that are undisputed. He's reaching into his waistband, the elbow comes up, and we can end the analysis there. But a district court- So is your position that the district court is- that that is not a disputed fact? Because my reading here, it seems as if the district court is saying that that is a disputed fact. If he turned, if he pointed- Those are the things that she's saying that are disputed facts that are for the jury to decide. I don't think she made any reference to the turning. I think she said that whether the weapon was pointed at them could be called into question, and she relied entirely on the placement of the shots. There's no contradictory evidence in the record at all about turning or how he turned or when he turned. She relied entirely on placement of the shots and denied qualified immunity on that basis alone. I see that my time is up, other than my reserved time. Thank you. Thank you, sir. Mr. McDaniel. Good morning. May it please the court, Brian McDaniel on behalf of the appellees. We've always taken the position that there are genuine issues of material fact that make this case appropriate for a jury's determination. Appellants have gone from we dispute or contend with the district court's finding that there is at least a genuine issue of fact regarding whether or not a shot was fired or whether or not a firearm was pointed now to conceding that that was at least determined by the district court to be in dispute. But then they turn to this court and say that what is still at issue is, well, actually what is not at issue is whether or not there were these furtive movements which supported a finding that the shooting of Mr. O'Kron by these defendant officers was reasonable. I contend and submit to this court that even those facts are disputed and should not be the basis for this court's overturning of the district court's ruling. The issue here is that many of the positions that the defendant officers appellants have taken all throughout their attempt to overturn the original ruling of the court is based upon their determination that what it is that the officers are saying is in fact true. That in fact it is the gospel. And because these officers have taken the position that one, Mr. O'Kron fired a firearm. One, Mr. or two, Mr. O'Kron pointed a firearm. Or three, now that there were these furtive gestures means that there should not be a trial. Can I ask you about the clearly established right? Yes, Your Honor. The district court found that there was a clearly established right to be free from deadly force when armed fleeing and non-threatening. And the case, the only case that the court relied on for that is Henry v. Purnell? Yes, Your Honor. Do you agree that Henry v. Purnell was not about an armed suspect? The court said repeatedly in that case the officer had no reason to think he was armed. I agree, Your Honor. But I think Henry stands for the proposition that one should not be shot. The fleeing individual should not be shot in the back by law enforcement and that the question still remains whether or not in that situation or even in Mr. O'Kron's scenario, whether or not an officer is aware of the fact that there is this constitutional right to remain free from this type of use of excessive force. So the clearly established right the court found is inaccurate. It's legal error. I wouldn't say it's legal error, Your Honor. I would say that it's not necessarily exactly analogous because of the distinction between the facts. Well, it's not just a question of whether it's analogous to this case. It's even does that clearly established right exist? And it certainly doesn't based on the one case she cited for the proposition. Well, I think it's a finer point than that, Your Honor. I think the clearly established right is informed by that case and cases like it where individuals have been shot in the back and that law enforcement is aware of the constitutional right to remain free from that level of force. I point the court to Risher v. Chapman, which was from 2019, Westlaw case 926414, where Mr. Risher was shot in the back and that the court made a determination that there was a clearly established right to be free from that level or that type of excessive force to be used where Mr. Risher was a driver, the law enforcement officer pulls up behind him, Mr. Risher avoids that officer, eventually gets out of the vehicle, runs, and that there was then this contention between what Mr. Risher said about whether or not he had a firearm, whether or not he actually even pointed the firearm and what was... Here there's no dispute that he's armed, right? I think the record supports that, yes, Your Honor. Let me ask you this, but in Henry there's a... I understand that he's unarmed in Henry, but there's much discussion about the threatening in Henry. How is that different than here? Well, here the allegation, Your Honor, is that they believe that he represented a threat to the officers and to potentially other individuals, although there's no indication on this record that there were any other individuals out there by virtue of the fact that he had this firearm and is running. There's no suggestion other than the contention that he turns allegedly and points this firearm that he in any other way represented a danger to anyone else. But those are issues, I think, that the district court said are issues of fact for the jury to decide. I agree. If he turned, even though counsel said that it's not, it's JA 562 where she says that a jury, that is an issue of fact that a jury could decide that he did not turn. So I think what we have before us under what we can review is that he, there is a, that Mr. O'Kron is running from the police, that he I think her question is that the way the district court says is her the right, she identifies the right as the right not to be shot in the back while fleeing officers when the officers suspected that the individual was armed, but the individual never pointed a firearm at the officers. It was clearly established on January the 8th of 2021. And then that's when she cites Henry. And so I, she cites Henry and she discusses the running away, the fleeing, and then she says, and she points out the non-threatening portion of Henry. Yes, Your Honor, but in this instance, and I think the court for that clarification, in this instance I think part of the problem is that the appellants rely heavily upon the assertion that these events took place in the way that they allege they took place. So if we accept that the district court found at least that there's some question about whether there's this firing, pointing, and we would submit to the court that there's even a question about whether or not this furtive movement took place, then what we have is a situation in the light most favorable to the appellee is an individual who was running from police who was shot in the back. Did the district court find a dispute of material fact? I thought she listed two, kind of repeatedly she listed two disputes, genuine disputes of material fact that prevented summary judgment here, and it was pointing a weapon and firing a weapon. I only raised the furtive movement because now it appears that the appellant is suggesting to the court that this court can rely upon the record which supports from their perspective a finding that he made this furtive movement. Yeah, we just have to accept what the district court found, right? And sometimes that's a trick to try to figure out well what are the facts that the district court was operating on, but she seemed to say plaintiff accepts all of these facts except pointing the gun, firing the gun, and then she has some paragraphs going through the evidence and finding a dispute about pointing it and firing it. And I think that's accurate, your honor, but what the court did not say is that it's undisputed that there was this furtive movement, which I think is what the appellants now have rose to suggest, that on this record, because the district court did not enumerate that as part of the two or three issues that are genuine issues of material fact, that now it's undisputed that there was this furtive movement and that this court can rely upon that in overturning the district court. Wasn't that part of the set of facts we have to accept that she didn't find a material dispute about whether there was the high elbow reaching for the waistband, whether the gun was previously concealed but later exposed? I would just say to this court that it doesn't appear from the order that she made an affirmative finding that that actually took place. But even if the court were to, on this record, suggest that the court found those two other issues of genuine issues of material fact and that that stood on the record, it's our position that that would be insufficient to overturn the district court's ruling. Particularly given the other objective evidence that the court and any jury would have in order to place what it is that the officers are saying in terms of their what we would submit to this court as our self-serving narratives about what happened and what are those. The court has already highlighted the fact that there were some 27 shots that were fired. The appellants suggest that there were four shell casings from those 27 shots that were not found. But as it relates to the firearm that they allege Mr. Ocron had and that allegedly was fired, there is no shell casing from that firearm. Also interestingly on that point is the fact that there is the gunshot residue test that is done where gunshot residue is found on the left sleeve and the right sleeve of the coat that Mr. Ocron was wearing but not on his hand that was preserved from the scene. And then all of this takes place in the context of what the appellee would say in the inappropriate meetings between the officers prior to their formal interview by Detective Hamlin in connection with the criminal case. The judge took that into account in assessing I guess their credibility. But there was no evidence that they had done anything inappropriate at those meetings. They had talked to each other and socialized and this case came up. I think that's reasonable under the circumstances. But they used some of the lingo that was similar to one another she thought. Right, I mean it's the court thought that it was mentionable that in the depositions of each of the officers that talked about the meeting that they had prior to their being interviewed. And she mentioned that they were the witnesses that were still alive. These are the only witnesses unfortunately for Mr. Ocron who are still alive and able to provide the account of which we would submit to the court is and are self-serving. But I think even larger than that, these officers, particularly a supervising officer, Officer Delgado, who's responsible ostensibly But we have to take the facts the way she recited them, right? That's right, your honor. And so I'll not spend too much time on that, but it has always been interesting to the appellees that these officers who are aware of the fact. I think they now say they don't dispute any of the facts. I think that's right. I think that's right. And so in short, your honor, we believe that the ruling of the district court was appropriate at the stage that we are in that the appellant's position requires that this court view the evidence in the light most favorable to the moving party as opposed to the non-moving party and that this court should uphold the ruling of the lower court. And upon that we would submit. Thank you very much. Thank you. Appreciate it. Mr. Levine, you've saved some time. Thank you, your honor. I think that there's a distinction to be drawn between viewing evidence in the light most favorable and engaging in sheer speculation, if not fantasy. This court has never said that you can overcome summary judgment. You're saying that there's speculation in the rulings of the court? Or in the argument today? Well, we're not going to rehash all of the factual issues because I don't think that's what we're relying upon. Don't you raise the term with the location of the shots and that being material fact. It isn't material because the jury would be left to speculate as to the significance of that in this fact pattern. But I want to talk about clearly established because it's raised in our papers and it is one of the arguments that we've made that the court did commit a legal error with respect to the clearly established prong of the analysis. And again, Henry versus Purnell, a taser case involving an unfortunate set of facts where a deputy thought he was drawing a taser and drew a firearm. That's not what we have here someone who's non-threatening and fleeing. Again, there is nothing in the district court's opinion that calls into question the furtive movements that are made. And so, again, discounting the pointing of the firearm, discounting the firing of it and suspending disbelief that any of that actually happened. Just relying on the undisputed facts in the record. And Judge Chazanow didn't point out anything that calls any of this into question. You have an armed fleeing felon. And again, we can zoom out in light of Barnes and May. We can or some of these other cases where you have essentially an unarmed individual who's shot while fleeing. They knew that he had a firearm. That is undisputed. And it is also undisputed that during the course of this foot pursuit, the hand goes into the waistband. And again, we can end the analysis there where it's coming out. And when Mr. Okren was found, that weapon was not in his waistband. It is undisputed in this record that that weapon was out. It got out somehow. And the officer didn't pull it out. There's nothing in the record to suggest that. So if the court ends its analysis there by taking the facts as the district court found them, there is nothing that would preclude a granting of qualified immunity based on you have four veteran officers who see an individual they know for certain is armed. And the hand goes into the waistband and the weapon comes out. This is not one of those cases where there is no reasonable basis to conclude that that posed an immediate threat to their lives. In that split second, we cannot put officers in that position where they have to wait longer than that. This is not a low level type of offense. And we raised that in our papers as well, that there was a misapplication of the first grand factor. The first grand factor, accepting the facts as the district court found them, does not favor the plaintiff. Because the court focused only on this misdemeanor offense of carriage of a weapon without a permit. That's not, and this court made clear in Anderson in 2001, that is not the analysis on the first grand factor. The analysis is, what was the offense at the time that the deadly force was employed? Because if we accepted the district court's analysis, then a shoplifter who pulls a gun and deadly force is employed, we would say, well, the crime was shoplifting. It may have been earlier. But once the gun is involved, and as that gun is coming out, now we have assaultive type behavior. We have an immediate threat to the officer's lives. So there were two significant legal errors that the district court made in addition to the mischaracterization of certain facts as material, and we contend they are not material. And they are, one, the misapplication of the first grand factor with respect to the severity of the offense, and significantly defining clearly established generally. And the Supreme Court's opinions on this have become a drumbeat. The district courts may not define clearly established generally. It has to be very specific. And the district court respectfully did not do that in this case. And I think the citation to Henry v. Purnell underscores that. So for these reasons, we would expect... You don't like Henry Purnell? Henry v. Purnell? Do I not like it? Or you do like it? Well, I think it's a very, it's an unfortunate weapons misidentification. You say it's miscited. No, I don't think it's, I don't think it's, I don't think that's the law that is clearly established that applies in this case. You have a subject in Henry v. Purnell, a low-level offense, fleeing from police... That's an in-bank ruling of this court. I'm sorry? That's an in-bank ruling of this court. And I think it was decided correctly. I'm not questioning the... No, no, I'm not taking issue with the decision. I'm not taking issue with the decision. The officer in that case never intended to use deadly force. The officer intended to pull his taser and mistakenly pulled a firearm. So we take no issue with Henry v. Purnell. But that law... Let me ask you about, I asked him this earlier about Henry v. Purnell. The district court seems to focus on the non-threatening portion of that opinion. How is that different here? I'm assuming their argument is that he was, that it was non-threatening. He never turned around. He never pointed the weapon. He was still running at the officer. So this court would have to decide that it's non-threatening when a fleeing felon reaches into his waistband. And I'm not sure, you keep saying that the court made a finding that the court said that that, but I'm not, the district court said that that wasn't disputed. I'm not sure. That seemed to me a little gray in the opinion. But if you can show it to me, that would be great. Where she says that it's not disputed that he pulled a gun. I don't think the court said it was undisputed. I think the court sort of lumped it all together and focused only on the pointing. But the court sort of discounts, and she does recite the deposition testimony where Sergeant Delgado says he saw the high elbow and the other officers all said they saw the reaching. And again, they know this person is armed. This is not a cell phone case. But I don't know if she ever in her opinion said that that fact was not disputed. Did she identify all of the undisputed facts or did she identify only the disputed facts? She identified only the disputed facts. And those disputed facts could be determined by a jury in your favor. And you still get immunity after that. Well, and I don't. And she says there's material disputed facts and that there needs to be a trial so that trials presumably would decide those disputed facts. You could specify it interrogatories to the jury on those points, and maybe the jury would find them in your favor. The only dispute the district court has done. That's what jury trials are for. I understand, Your Honor. I think the only dispute. The only question here is whether her ruling that there needs to be a trial needs to be upheld. Because I see it. And the court to get there has to get past the obvious undisputed furtive movements that Mr. O'Kran makes during the split pursuit. I don't know why you keep saying it's undisputed. She even says, if you look at JA 562, here, a reasonable jury could credit the officer's testimony to determine that Mr. O'Kran pointed his firearm and perhaps also fired a shot at defendant officers. On the other hand, a reasonable jury never turned around to point a gun at defendant officers. So I'm not sure how you're characterizing that she, that these are undisputed facts. When you have the district court saying at JA 562, that there is a question of fact as to whether or not he turned around, which is one of the furtive movements you said earlier, is that he turned around and he pointed a gun. And so how is that not disputed? But that's a third furtive movement. And so the district court doesn't say a jury could reasonably conclude based on I don't know what. They would have to simply disbelieve everything because there's no contrary evidence. The jury could reasonably conclude that Mr. O'Kran pointed a gun. And this court would have to essentially decide that those furtive movements don't count. That they are not sufficient to allow an officer to use deadly force when they know the person is armed and has said, I'm not going back to prison, I'll shoot it out. And that's exactly what Mr. O'Kran did. Your Honors, thank you very much. I see my time has long expired. We respectfully request that the committee reverse the district court's denial of qualified immunity. Thank you.
judges: Robert B. King, Allison J. Rushing, DeAndrea Gist Benjamin